# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER MILLER SABATIER | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CHASE HOME FINANCE LLC | § | |
| | § | |
| DEFENDANT | § | |

## DEFENDANT'S APPENDIX IN SUPPORT OF NOTICE OF REMOVAL

| No. | Date Filed or Entered | Document |
|---|---|---|
| 1. | -- | State Court Case Summary / Docket Sheet |
| 2. | December 3, 2010 | Plaintiffs' Original Petition and Jury Demand |
| 3. | December 3, 2010 | Civil Case Information Sheet |
| 4. | December 3, 2010 | Civil Citation |
| 5. | December 10, 2010 | Certified Mail Receipt |
| 6. | December 28, 2010 | Defendant's Original Answer |
| 7. | January 10, 2011 | Plaintiff's First Amended Original Petition |
| 8. | January 12, 2011 | Correspondence to Clerk |
| 9. | January 12, 2011 | Motion to Set and Notice of Hearing |

**EXHIBIT**
**A**

Respectfully submitted,


*/s/ Wm. Lance Lewis*
WM. LANCE LEWIS
State Bar No. 12314560
GREGORY M. SUDBURY
State Bar No. 24033367
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Phone)
(214) 871-2111 (Fax)
llewis@qslwm.com
gsudbury@qslwm.com

**ATTORNEYS FOR CHASE HOME FINANCE
LLC**

## CERTIFICATE OF SERVICE

This is to certify that on January 17, 2011, a true and correct copy of the foregoing document was furnished to the following parties, in accordance with the Federal Rules of Civil Procedure, as follows:

*Via CMRRR*

Edmond S. Moreland, Jr.
FLOREANI & MORELAND, LLP
13500 Ranch Road 12, Suite E
Wimberley, Texas 78676
**Attorney for Plaintiff**


*/s/ Wm. Lance Lewis*
Wm. Lance Lewis / Gregory M. Sudbury

# CASE SUMMARY
## CASE NO. 13812-C

| Jennifer Miller Sabatier Vs. Chase Home Finance, Llc | § § § § | Location: | County Court at Law #2 |
|---|---|---|---|
| | | Judicial Officer: | Rodriguez, Linda A |
| | | Filed on: | 12/03/2010 |

---

### CASE INFORMATION

Case Type: **Other Civil Cases - County**

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | 13812-c |
| Court | County Court at Law #2 |
| Date Assigned | 12/03/2010 |
| Judicial Officer | Rodriguez, Linda A |

---

### PARTY INFORMATION

| | | *Lead Attorneys* | |
|---|---|---|---|
| **Plaintiff** | **Sabatier, Jennifer Miller** | Moreland, Edmond S., Jr. | 512-722-3692(W) |
| | | *Retained* | |
| **Defendant** | **Chase Home Finance, Llc** | | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 12/03/2010 | Citation Issued | |
| 12/03/2010 | Plaintiffs Original Petition (Open Case) *and Jury Demand* | |
| 12/03/2010 | INFORMATION SHEET | |
| 12/13/2010 | Certified Return Receipt *12-10-10 Chase Home Finance* | |
| 12/28/2010 | Defendant's Original Answer | |
| 01/10/2011 | Plaintiff's Amended Petition *First Amended Original Petition* | |

I, LIZ Q. GONZALEZ, COUNTY CLERK HAYS COUNTY, TEXAS, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on:

1-12-2011

LIZ Q. GONZALEZ
HAYS COUNTY CLERK
BY DEPUTY

---

| DATE | FINANCIAL INFORMATION | |
|---|---|---|

**Plaintiff** Sabatier, Jennifer Miller

| | |
|---|---|
| Total Charges | 292.00 |
| Total Payments and Credits | 292.00 |
| **Balance Due as of 1/12/2011** | **0.00** |

## EXHIBIT
1

*Printed on 01/12/2011 at 12:07 PM*

NO. 13812-C



| | | |
|---|---|---|
| JENNIFER MILLER SABATIER,<br>Plaintiff, | §<br>§<br>§ | IN COUNTY COURT AT LAW<br>FILED<br>HAYS COUNTY, TEXAS |
| vs. | §<br>§ | at_____O'CLOCK_____M. |
| | §<br>§ | DEC 0 3 2010 |
| CHASE HOME FINANCE, LLC,<br>Defendant. | §<br>§ | _____<br>COUNTY CLERK |
| | | HAYS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

COMES NOW, Plaintiff, Jennifer Miller Sabatier, plaintiff, and petitions the Court for relief

for damages caused by the unlawful acts or omissions of defendant Chase Home Finance, LLC

("defendant") under the common law of the State of Texas and the Texas Civil Practice and

Remedies Code, §§38.001, *et seq.* and 141.001, *et seq.* Plaintiff shows as follows.

### Discovery Control Plan

1.      In accordance with Rule 190.1, Discovery Control Plan—Level 2 is intended to govern

this civil action.

### Parties

2.      Plaintiff Jennifer Miller Sabatier is an individual residing in Hays County, Texas.

3.      Defendant Chase Home Finance, LLC is a foreign corporation doing business in the

State of Texas.  It may be served with process by service on its registered agent for service, CT

Corporation, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

### Jurisdiction

4.      This Court has subject matter jurisdiction over this civil action.  This case is brought

under the common law of the State of Texas and the Texas Civil Practice and Remedies Code, §§

38.001, *et seq.* and 134.001, *et seq.* This Court has *in personam* jurisdiction over all the parties to

FILED
2010 DEC -3 AM 9: 47
DISTRICT CLERK
HAYS COUNTY, TEXAS

| **Plaintiff's Original Petition** | – Page 1 |
|---|---|

EXHIBIT
2

this action.  The amount in controversy in this case does not exceed $75,000.00 exclusive of interest and costs.

## Venue

5.      Hays County, Texas is plaintiff's residence, and Hays County is the county in which all or a substantial part of the events or omissions giving rise to this case occurred.  In addition, this case involves a breach of contract and fraud in connection with the plaintiff's attempts to refinance her mortgage with the defendant on real property located in Wimberley, Hays County, Texas.  Accordingly, venue is proper in this County under Texas Civil Practice and Remedies Code section 15.002(a)(1) and (4) and mandatory under TCPRC, § 15.011.

## Facts

6.      This case began in or around June 2010 with defendant's direct-mail solicitation of plaintiff for a mortgage refinance of real property in Wimberley, Texas.  Plaintiff first applied for a mortgage refinance as a result of defendant's direct mailing that she received in Wimberley, Texas.  She was put into contact with defendant's agent, John Anderson, to initiate the loan in June 2010.  At that time, Ms. Sabatier had a detailed conversation with Mr. Anderson regarding the issue of flood insurance.  Among other things, she told him, and he agreed, that in the event they were unable to resolve the issue to her satisfaction, she would be able to rescind the application and that defendant would refund the application fee.  As a result of Mr. Anderson's assurance, my client paid, and defendant accepted, the application fee of $395.00.

7.      Plaintiff was quickly approved for a refinance, and the loan was then turned over to the first of three loan processors, Maria Hollod, on July 8, 2010.  Her name, however, is almost entirely irrelevant because, for the four or so weeks the first processor "handled" it, despite repeated calls and emails from my client, she did nothing to process the loan.

8.      On or about August 9, 2010, approximately six weeks after she first contacted defendant about a refinance, and one month after its assignment to Ms. Hollod, the loan was next turned over to Scott Drovitz.  Plaintiff did hear from him--for a little while at least.  Mr. Drovitz's first order of business was to put plaintiff in touch with another of defendant's employees who demanded that she write two letters: one explaining matters that appeared on her credit report, even though that report was and is excellent, and the second explaining a previous address in a world where people often move.  Just as she would do every time Chase moved the target on her, plaintiff immediately complied defendant's inane demand.

9.      Mr. Drovitz then said that he had set this loan for closing and defendant sent a HUD-GFE.  Plaintiff responded to the GFE, which was wrought with errors, but, not surprisingly since defendant had no intention ever of closing on this loan, she never received any feedback on her response.  Mr. Drovitz claimed he set a closing for the morning of August 23.  He then proceeded to cancel it late that morning, citing, for the first time ever, and despite plaintiff's very clear discussion with Mr. Anderson in June, some vague problems with the flood insurance.  Thereafter, plaintiff did not hear from Mr. Drovitz for weeks.  As it happened, defendant claims he terminated employment; yet defendant neglected to notify plaintiff, or, apparently transfer the loan to someone who still worked for defendant.

10.      As a result, the undersigned wrote an email on September 6 to Scott Drovitz.  He did not respond.  The undersigned then called defendant on September 8 to inquire about the status of the loan.  It was only then that plaintiff learned that Chase claimed that Mr. Drovitz no longer was affiliated with the defendant.

---

11.    The loan was then turned over to the third processor, Mr. Martin T. Ferguson on September 8, 2010 (almost exactly one month after it was assigned to Mr. Drovitz and exactly two months after its assignment to Ms. Hollod). Mr. Ferguson contacted plaintiff on September 9 and promptly claimed to set closing for September 17. He canceled that closing, and again claimed to reset closing, this time for Friday, September 24. He never sent a HUD good faith estimate for either of those closings. That fact is hardly surprising since defendant never had any intention of closing on this refinance. Defendant again and, by this time, predictably, canceled the third closing, again citing the self-same vague problems with the flood insurance that Mr. Drovitz had cited one month earlier, and during which month defendant could have worked–but did not work–to resolve it.

12.    On what was to be the third alleged closing date, September 24, a full one month after Mr. Drovitz had said there were–without specifying what they were–problems with plaintiff's flood insurance, in an effort to continue its ruse in hopes that plaintiff would give up, defendant forwarded to plaintiff three different flood insurance options that her insurance agent had proposed directly to defendant. Defendant told her which option it would consider to be in compliance with the mortgage agreement in connection with the refinance. After discussing the matter with her insurance agent, on the very next business day, Monday, September 27, plaintiff purchased FEMA Zone A coverage to satisfy the latest of Chase's demands; and she mailed the policy premium for that coverage the following day, on September 28. On the same day, plaintiff emailed Mr. Ferguson and told him that she had mailed the premium payment.

13.    Of course, had plaintiff known which of the flood coverage options defendant would accept in August, when defendant canceled the first alleged closing for the same reason it canceled the second and third three and four weeks later, respectively, she would have put in motion the

process to change her flood coverage at that time. Defendant, of course, characteristically dithered and failed to do so at that time. In this and other ways, defendant has continuously frustrated plaintiff's performance.

14. Regardless, plaintiff had been in contact with the insurance agent processing the new policy, and both plaintiff and the agent have kept defendant informed about the progress of that policy. Of course, plaintiff would not have purchased this significantly more expensive policy had defendant not demanded that she do so. Indeed, defendant holds plaintiff's current mortgage and continues to accept as complying with the terms of the existing mortgage agreement the less expensive flood coverage. The flood policy that plaintiff initiated on September 28, 2010, is $837.00 more expensive than that which defendant currently accepts. Plaintiff would not have incurred that damage but for Chase's fraudulent and otherwise illegal acts.

15. On October 1, 2010, only four (4) days after plaintiff started the processing of the new flood insurance policy in compliance with Chase's latest demand, without prior warning, Mr. Ferguson wrote a terse email to plaintiff demanding the declarations page for the new policy by the end of that day. Of course, as both defendant and Mr. Ferguson knew, that was an impossible demand since the policy could not even have been written by that time. Nevertheless, again attempting to comply with Chase's endless demands for documentation and information, plaintiff contacted the insurance agent who reported that the policy was in progress. She immediately relayed that information to Mr. Ferguson.

16. That October 1 email was the last plaintiff heard from Mr. Ferguson, or anyone else at defendant, until October 20, 2010. Defendant had hoped Ms. Sabatier would go away after September 24. She did not. In an attempt to remain in contact with defendant (who tried on

Plaintiff's Original Petition                                                                    - Page 5

numerous occasions throughout this process to simply disappear with at least plaintiff's application fee), on October 8, 2010, plaintiff again contacted Mr. Ferguson to update him on the progress of the policy. The policy was still in process, and she reported that fact to Mr. Ferguson. Mr. Ferguson, again undoubtedly hoping that plaintiff would simply go away, never responded to that email; and plaintiff did not go away.

17.     Although plaintiff had heard nothing from him for nearly three (3) weeks, at 1:40 p.m. on October 20, 2010, plaintiff again updated Mr. Ferguson regarding the progress of the flood policy by forwarding an email from her insurance agent. Instead of giving her the courtesy of a response or an acknowledgment that he had received the email, and without having communicated with plaintiff for almost three weeks prior, at approximately 4:40 p.m. on October 20, Mr. Ferguson wrote an email to plaintiff that reads, in its entirety, as follows:

> "Jennifer,
>
> I never got the updated policy from Mr. Mayfield [the insurance agent] you are going to have to resubmit the loan when you get the new policy.
>
> Thanks[.]"

18.     Of course, Mr. Ferguson never received the updated policy because Ms. Sabatier had not received it. As of October 20, as far as she knew, the new policy was not complete. In fact, as Ms. Sabatier learned two days later, upon receipt of a letter on October 22, 2010 (dated October 18, 2010) the policy had in fact been completed on October 18, 2010. The defendant was also an addressee on that October 18 letter, and defendant had likely received the letter indicating the new flood policy was in place–and Chase was thus out of excuses to delay closing any longer–before it sent its October 20 email unilaterally cancelling the refinance. Thus, the flood insurance policy on

---

which Chase claimed the plaintiff's refinance was hanging in the balance was complete and in place two days before it simultaneously breached the contract and made clear to the plaintiff its fraudulent intention all along never to close on the plaintiff's mortgage refinance.

19.     In any event, the policy certainly would have been complete weeks before October 20 had defendant not dragged its feet for over a month to correct the alleged problem with the flood policy that it knew about at least as early as August 23.  Nevertheless, with Mr. Ferguson's strange passive aggressive and cryptic email, defendant has unilaterally canceled the refinancing process; and it has done so, according to the defendant, as a result of the flood issue that (1) Mr. Anderson assured Ms. Sabatier would result in a full refund of her application fee if it derailed the refinancing process and (2) defendant could have corrected–but did not correct–at least one month prior.

20.     In sum, defendant induced plaintiff into submitting an application for refinance in June 2010 and accepted her fee (and probably a low-interest or interest free loan from the Federal Reserve).  After plaintiff endured months of lying, dithering, excuses, scheduled closings, canceled closings and onerous, contradictory and counterproductive demands (all of which she patiently endured and promptly met), defendant now has unilaterally terminated this loan refinance process on the weak pretext that it had not received information regarding a completed policy of insurance that had already been completed, but of which plaintiff was unaware (but about which completion Chase had previously been apprised).

21.     Defendant constantly moved the target on the plaintiff–it always requested more and additional information–and then, although plaintiff provided all the information and complied with all of defendant's onerous demands, it unilaterally pulled the plug on the refinance for a reason that

is demonstrably false. Chase's pattern of behavior betrays the fact that, from the beginning, it had no intention of ever honoring its contract with plaintiff to refinance her mortgage.

22.     Although it has unilaterally canceled the refinance through no fault of plaintiff, defendant has failed and refused to refund the plaintiff's application fee of $395.00, and has instead, unlawfully kept plaintiff's application fee. In addition, as noted above, Chase's fraudulent and otherwise illegal acts proximately caused plaintiff to incur an additional and unnecessary $837.00 in flood insurance premiums.

23.     Additionally, and more importantly, defendant has breached its contract, supported by good and adequate consideration, to complete the refinancing process, which would have resulted in a significantly mortgage interest rate (from 6.375% to 5.125%). By plaintiff's calculations, the damages plaintiff has suffered as a result of Chase's failure to honor its contract to refinance this mortgage are approximately $38,441.52 over the life of the refinanced mortgage had defendant not committed fraud and breached its contract.

24.     On October 22, 2010, the undersigned wrote a DTPA and TCPRC 38.001 demand letter to the defendant as a predicate for bringing the present lawsuit. On October 27, 2010, defendant's senior executive, Mr. Matthew Dang, called the undersigned and made a verbal offer of settlement. He offered to resolve this matter by giving the plaintiff a "no-cost" mortgage refinance by waiving approximately $3,400.00 in the "junk fees," as Mr. Dang called them, that Chase normally charges its refinance customers. The undersigned asked that Mr. Dang put that offer in writing, but Chase has again failed to follow through and honor another of its commitments, this time the defendant's October 27, 2010 offer of settlement.

**Causes of Action**

**Count One–Breach of Contract**

24.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 23, inclusive.

25.     All conditions precedent to defendant's performance under the contract have occurred or have been performed, excused, waived or otherwise satisfied.

26.     Plaintiff fully or substantially performed all her obligations under the contract, she tendered performance, or any alleged failure to perform is excused.

27.     Defendant breached the contract by failing and refusing to complete and close on the mortgage refinance as described hereinabove.

28.     As a direct and proximate result of defendant's breach of contract, plaintiff has suffered economic damages in an amount within the jurisdictional limits of this Court, and for which she hereby sues.

29.     In addition to actual and consequential damages, plaintiff also seeks an award of reasonable attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code, § 38.001, *et seq.*, for which plaintiff hereby sues.

**Count Two–Fraud**

30.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 23, inclusive.

31.     As indicated above, defendant made one or more material representations regarding its intentions to close on the mortgage refinance involved in this case; (2) defendant's representations were false; (3) when it made them it knew them to be false or defendant made them recklessly

without any knowledge of the truth and as positive assertions; (4) defendant made its false representations with the intention that the plaintiff should act on them; (5) the plaintiff acted in reliance upon the defendant's misrepresentations; and (6) the plaintiff thereby suffered injury.

32.     Accordingly, defendant has committed actionable fraud and for which she hereby sues.

33.     As a direct and proximate result of defendant's fraud, plaintiff has suffered compensatory damages, including but not limited to, damages for mental pain, suffering and anguish, and for which she hereby sues.

34.     As a direct and proximate result of the defendant's fraud, the plaintiff has suffered damages in an amount within the jurisdictional limits of this Court and for which she hereby sues.

35.     Defendant committed the acts described herein with fraud, malice or gross negligence thereby entitling plaintiff to an award of punitive or exemplary damages.

**Count Three–Negligent Misrepresentation**

36.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 23, inclusive.

37.     Defendant was acting in the course of its business, profession or employment and/or had a pecuniary interest in the transaction, supplied false information for the guidance of the plaintiff in her business transactions, and defendant failed to exercise reasonable care or competence in obtaining or communicating the information. Plaintiff justifiably relied on that false information the defendant communicated. As such, defendant is liable for unlawful negligent misrepresentation.

38.     As a direct and proximate result of her justifiable reliance, the plaintiff has suffered actual damages in an amount within the jurisdictional limits of this Court and for which plaintiff

hereby sues. As a proximate result of defendant's negligent misrepresentation, the plaintiff has suffered consequential damages that flowed directly from those misrepresentations, and which damages were a foreseeable consequence of that unlawful conduct.

39.     As a result of defendant's negligent misrepresentation, the plaintiff has suffered mental pain, suffering, anguish, and loss of enjoyment of life for which she hereby sues.

40.     Defendant's unlawful conduct was fraudulent, malicious or grossly negligent and therefore justifies the imposition of exemplary damages for which plaintiffs hereby sue.

**Count Four–Texas Theft Liability Act, Texas Civil Practice and Remedies Code, § 134.001, *et seq.***

41.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 23, inclusive.

42.     The defendant's actions in unlawfully appropriating the plaintiff's property constituted violations of the Texas Theft Liability Act, Texas Civil Practice and Remedies Code, § 134.001, *et seq.* Specifically, defendant unlawfully appropriated property as described by Section 31.03, Texas Penal Code.

43.     As a result of defendant's unlawful acts under the Texas Theft Liability Act, plaintiff has suffered actual damages in an amount within the jurisdictional limits of this Court and for which she hereby sues. Plaintiff also sues for statutory damages in the maximum amount permitted by law.

44.     As a result of defendant's unlawful acts under the Texas Theft Liability Act, plaintiff has suffered damages for mental pain, suffering and anguish for which plaintiff is entitled to recover against defendant. As a result of defendant's violations of the Texas Theft Liability Act, the plaintiff

have suffered consequential damages that flowed directly from those acts, and which damages were a foreseeable consequence of that unlawful conduct.

45.    Defendant's unlawful acts under the Texas Theft Liability Act were fraudulent, malicious or grossly negligent thus entitling plaintiffs to an award of exemplary damages.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jennifer Miller Sabatier prays that the Defendant Chase Home Finance, LLC be cited to appear, that the Court set this case for trial at the earliest practicable date and, on trial of this cause, Plaintiff have judgment against Defendant for the following relief:

1.    Actual, consequential and/or statutory damages as set forth above in the maximum amount the law allows;

2.    Pre-judgment and post-judgment interest at the highest lawful rates;

3.    Punitive or exemplary damages;

4.    Attorney's fees and costs of suit;

5.    Declaratory and/or injunctive relief; and

6.    Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

FLOREANI & MORELAND, LLP
13500 Ranch Road 12, Suite E
Wimberley, Texas 78676
(512) 722-3371
(512) 233-5172 - Telecopier

By: _Edmond S. Moreland_____

Edmond S. Moreland, Jr.
Texas Bar No. 24002644

**ATTORNEY FOR PLAINTIFF**

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* ___13812 C___   COURT *(FOR CLERK USE ONLY):* **ORIGINAL**

HAYS COUNTY, TEXAS
_____ o'clock ___ M.

STYLED SABATIER, JENNIFER M. v. CHASE HOME FINANCE, LLC at   DEC 0 3 2010

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| **Name:** Edmond S. Moreland, Jr. **Email:** edmond@flor-morelaw.com | **Plaintiff(s)/Petitioner(s):** Jennifer M. Sabatier | ☒Attorney for Plaintiff/Petitioner ☐Pro Se Plaintiff/Petitioner ☐Title IV-D Agency ☐Other: ___ |
| **Address:** 13500 RR 12, Suite E **Telephone:** (512) 722-3692 | **Defendant(s)/Respondent(s):** Chase Home Finance, LLC | |
| **City/State/Zip:** Wimberley, Texas 78676 **Fax:** (512) 233-5172 | | **Additional Parties in Child Support Case:** |
| **Signature:** *Edmond S Moreland Jr* **State Bar No:** 24002644 | *[Attach additional page as necessary to list all parties]* | **Custodial Parent:** ___ **Non-Custodial Parent:** ___ **Presumed Father:** ___ |

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

### Civil

**Contract**

*Debt/Contract*
☐Consumer/DTPA
☐Debt/Contract
☐Fraud/Misrepresentation
☐Other Debt/Contract:

*Foreclosure*
☐Home Equity—Expedited
☐Other Foreclosure
☐Franchise
☐Insurance
☐Landlord/Tenant
☐Non-Competition
☐Partnership
☐Other Contract:
___

**Injury or Damage**
☐Assault/Battery
☐Construction
☐Defamation
*Malpractice*
☐Accounting
☐Legal
☐Medical
☐Other Professional Liability:
___
☐Motor Vehicle Accident
☐Premises
*Product Liability*
☐Asbestos/Silica
☐Other Product Liability List Product:
___
☐Other Injury or Damage:
___

**Real Property**
☐Eminent Domain/ Condemnation
☐Partition
☐Quiet Title
☐Trespass to Try Title
☐Other Property:
___

**Related to Criminal Matters**
☐Expunction
☐Judgment Nisi
☐Non-Disclosure
☐Seizure/Forfeiture
☐Writ of Habeas Corpus— Pre-indictment
☐Other: ___

### Family Law

**Marriage Relationship**
☐Annulment
☐Declare Marriage Void
*Divorce*
☐With Children
☐No Children

**Post-judgment Actions (non-Title IV-D)**
☐Enforcement
☐Modification—Custody
☐Modification— Other

**Title IV-D**
☐Enforcement/Modification
☐Paternity
☐Reciprocals (UIFSA)
☐Support Order

**Other Family Law**
☐Enforce Foreign Judgment
☐Habeas Corpus
☐Name Change
☐Protective Order
☐Removal of Disabilities of Minority
☐Other: ___

**Parent-Child Relationship**
☐Adoption/Adoption with Termination
☐Child Protection
☐Child Support
☐Custody or Visitation
☐Gestational Parenting
☐Grandparent Access
☐Paternity/Parentage
☐Termination of Parental Rights
☐Other Parent-Child:

### Employment

☐Discrimination
☐Retaliation
☐Termination
☐Workers' Compensation
☐Other Employment:

### Other Civil

☐Administrative Appeal
☐Antitrust/Unfair Competition
☐Code Violations
☐Foreign Judgment
☐Intellectual Property
☐Lawyer Discipline
☐Perpetuate Testimony
☐Securities/Stock
☐Tortious Interference
☐Other: ___

### Tax

☐Tax Appraisal
☐Tax Delinquency
☐Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
☐Dependent Administration
☐Independent Administration
☐Other Estate Proceedings

☐Guardianship—Adult
☐Guardianship—Minor
☐Mental Health
☐Other: ___

## 3. Indicate procedure or remedy, if applicable (may select more than 1):

**EXHIBIT**
**3**

## CIVIL CITATION

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **CAUSE NO.** 13812-c |
| | § | |
| **COUNTY OF HAYS** | § | **COUNTY COURT AT LAW** |

**Jennifer Miller Sabatier, Plaintiff**
**VS.**
**Chase Home Finance, Llc, Defendant**

**TO DEFENDANT(S):**

Chase Home Finance, Llc
Registered Agent CT Corporation System
350 North St Paul St Ste. 2900
Dallas TX  75201

**YOU HAVE BEEN SUED.**   You may employ an Attorney.  If you or your Attorney do not file a written answer with the Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you.

Attached hereto is a copy of the **Plaintiffs Original Petition and Jury Demand** (Open Case) which was filed by the **PLAINTIFF** in the above styled and numbered cause on  12/03/2010,  in the County Court at Law of Hays County, 110 East MLK Drive, San Marcos, Texas 78666.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT** at my office in San Marcos, Texas, on this the **on this the 3rd day of December, 2010.**

                    **LINDA C. FRITSCHE, CLERK OF THE COUNTY
                    COURT, HAYS COUNTY, TEXAS**

        **BY**_____
                    **Susan Pratt, DEPUTY**

Plaintiff's Attorney:
Edmond S. Moreland, Jr., FLOREANI & MORELAND LLP
13500 Ranch Road 12 Suite E
Wimberley TX 78676, 512-722-3692

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₁

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  13812-C
Street, Apt. No.; or PO Box No.  Chase Home Finance
City, State, ZIP+4

PS Form 3800, August 2006                See Reverse for Instructions

7009 2250 0003 1461 4305

**RETURN**

010, at _____ o'clock, ___.M.  and executed at
unty of _____, Texas on the _____ day
_____.M.  by delivering  to  the  within  named
_____In person a true copy of this citation together with
y of such citation to such copy of the pleading and

_____

Constable Precinct ____ Hays County, Texas

By_____
                    Deputy

**EXHIBIT**
**4**

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chase Home Finance
R/A. CT Corporation System
350 N. St. Paul St
Ste 2900
Dallas, Tx. 75201.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  R. Pina                    ☐ Agent
                             ☒ Addressee

B. Received by (Printed Name)     C. Date of Delivery

R PINA                        DEC 1 0 2010

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7009 2250 0003 1461 4105

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

EXHIBIT
5

CAUSE NO. 13812-C

| | | |
|---|---|---|
| JENNIFER MILLER SABATIER | § | IN THE COUNTY COURT AT LAW |
| PLAINTIFF, | § | |
| | § | FILED |
| v. | § | HAYS COUNTY, TEXAS |
| | § | at_____o'clock____M. |
| CHASE HOME FINANCE LLC | § | DEC 28 2010 |
| | § | |
| DEFENDANT | § | HAYS COUNTY, TEXAS |

COUNTY CLERK

## DEFENDANT CHASE HOME FINANCE LLC'S ORIGINAL ANSWER

Defendant Chase Home Finance LLC ("CHF"), in response to Plaintiff's Original Petition and Jury Demand, files this its Original Answer thereto.

I.

## GENERAL DENIAL

CHF denies all and singular the allegations contained in Plaintiff's Original Petition and Jury Demand, and demands strict proof thereof.

II.

## ADDITIONAL DEFENSES

CHF pleads the following matters in defense, should the same be necessary:

1.     CHF specifically denies that all conditions precedent to Plaintiff's claim for recovery have occurred or been met.

2.     Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

3.     Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine.

4.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel and/or ratification.

5.     Plaintiff's claims are barred, in whole or in part, by the negligence and/or comparative and/or proportionate responsibility of Plaintiff.

-1-

EXHIBIT
6

6.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

7.     Plaintiff is not entitled to recover attorneys' fees or expenses on one or more of her claims.

8.     Plaintiff's exemplary or punitive damages claims are barred, in whole or in part, by the Due Process Clause and Excessive Fines Clause of the United States Constitution, Chapter 41 of the Texas Civil Practice and Remedies Code, or any other applicable law.

WHEREFORE, PREMISES CONSIDERED, CHF prays that Plaintiff take nothing by this suit, and that CHF go hence and recover costs in its behalf expended.

Respectfully submitted,

WM. LANCE LEWIS
State Bar No. 12314560
GREGORY M. SUDBURY
State Bar No. 24033367
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 880-1827 (Direct)
(214) 871-2111 (Fax)
llewis@qslwm.com
gsudbury@qslwm.com

**ATTORNEYS FOR DEFENDANT CHASE
HOME FINANCE LLC**

-2-

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument is being served upon counsel for Plaintiff, via facsimile, in accordance with the Texas Rules of Civil Procedure on this 22nd day of December, 2010.

Wm. Lance Lewis / Gregory M. Sudbury

-3-

# ORIGINAL

NO.13812-C

| | | |
|---|---|---|
| JENNIFER MILLER SABATIER,<br>Plaintiff, | §<br>§ | IN THE COUNTY COURT AT LAW |
| | §<br>§ | FILED<br>HAYS COUNTY, TEXAS |
| vs. | §<br>§ | at_____o'clock____M. |
| | § | JAN 10 2011 |
| CHASE HOME FINANCE, LLC,<br>Defendant. | §<br>§ | |
| | § | HAYS COUNTY COUNTY CLERK |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

COMES NOW, Jennifer Miller Sabatier, Plaintiff, and petitions the Court for relief for damages caused by the unlawful acts or omissions of Defendant Chase Home Finance, LLC ("Defendant") under the common law of the State of Texas and the Texas Civil Practice and Remedies Code, §§38.001, *et seq.* and 141.001, *et seq.* and Texas Business and Commerce Code, § 17.41, *et seq.* For causes of action, Plaintiff shows as follows.

### Discovery Control Plan

1.     In accordance with Rule 190.1, Discovery Control Plan–Level 2 is intended to govern this civil action.

### Parties

2.     Plaintiff Jennifer Miller Sabatier is an individual residing in Hays County, Texas.

3.     Defendant Chase Home Finance, LLC is a foreign corporation doing business in the State of Texas. It has made an appearance in this action by and through its counsel of record, Mr. William Lance Lewis, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

### Jurisdiction

4.     This Court has subject matter jurisdiction over this civil action. This case is brought under the common law of the State of Texas, the Texas Civil Practice and Remedies Code, §§

---

**Plaintiff's First Amended Original Petition**

EXHIBIT
7

- Page 1

38.001, *et seq.* and 134.001, *et seq.*, and the Texas Business and Commerce Code, § 17.41, *et seq.* This Court has *in personam* jurisdiction over all the parties to this action. The amount in controversy in this case does not exceed $75,000.00 exclusive of interest and costs.

## Venue

5.      Hays County, Texas is Plaintiff's residence, and Hays County is the county in which all or a substantial part of the events or omissions giving rise to this case occurred. In addition, this case involves a breach of contract and fraud in connection with the Plaintiff's attempts to refinance her mortgage with the Defendant on real property located in Wimberley, Hays County, Texas. Accordingly, venue is proper in this County under Texas Civil Practice and Remedies Code section 15.002(a)(1) and (4) and mandatory under TCPRC, § 15.011.

## Facts

6.      This is but one case of many of Defendant delaying, and then refusing, to close on a refinanced mortgage loan. Plaintiff was, and is, an existing mortgage customer of the Defendant. This case began in earnest in or around June 2010 with defendant's direct-mail solicitation of Plaintiff for a mortgage refinance of real property in Wimberley, Texas. Plaintiff first applied for a mortgage refinance as a result of that direct mailing. She was then put into contact with defendant's agent, John Anderson, to initiate the loan in June 2010. At that time, Ms. Sabatier had a detailed conversation with Mr. Anderson regarding the issue of flood insurance. Among other things, she told him, and he agreed, that in the event they were unable to resolve the issue to her satisfaction, she would be able to rescind the application and that Defendant would refund the application fee. As a result of Mr. Anderson's assurance, Plaintiff paid, and Defendant accepted, Plaintiff's application fee of $395.00.

---

**Plaintiff's First Amended Original Petition**

7.     Not surprising, since she has excellent credit and is an existing Chase mortgage customer, Plaintiff was quickly approved for a refinance, and the loan was then turned over to the first of a series of three ineffectual loan processors, Maria Hollod, on July 8, 2010.  Her name, however, is almost entirely irrelevant because, for the four or so weeks she "handled" it, despite repeated calls and emails from Plaintiff, Ms. Hollod did nothing to process the refinance.

8.     On or about August 9, 2010, approximately six weeks after she first contacted Defendant about a refinance, and one month after its assignment to Ms. Hollod, the loan was next turned over to Scott Drovitz.  Plaintiff did hear from him--for a little while at least.  Mr. Drovitz's first order of business was to put Plaintiff in touch with another of defendant's employees who demanded that she write two letters: one explaining matters that appeared on her credit report, even though that report was and is excellent, and the second explaining a previous address in a world where people often move.  Just as she would do every time Chase made a request and thus moved the target on her, Plaintiff immediately complied defendant's inane demand.

9.     Mr. Drovitz then said that he had set this loan for closing and Defendant sent a HUD-GFE.  Plaintiff responded to the GFE, which was wrought with errors, but, not surprisingly since Defendant had no intention ever of closing on this loan, she never received any feedback on her response. Mr. Drovitz claimed he set a closing for the morning of August 23.  He then proceeded to cancel it late on the morning of August 23, citing, for the first time ever, and despite plaintiff's very clear discussion with Mr. Anderson in June, some vague problems with the flood insurance on the property.  Thereafter, Plaintiff did not hear from Mr. Drovitz for weeks.  As it happened, Defendant claims he terminated employment; yet Defendant neglected to notify Plaintiff, or, apparently transfer the loan to someone who still worked for Defendant.

10.     As a result, the undersigned wrote an email on September 6 to Scott Drovitz. He did not respond. The undersigned then called Defendant on September 8 to inquire about the status of the loan. It was only then that Plaintiff learned that Chase claimed that Mr. Drovitz no longer was affiliated with the Defendant.

11.     The loan was then turned over to a third loan processor, Mr. Martin T. Ferguson, on September 8, 2010 (interestingly, almost exactly one month after it was assigned to Mr. Drovitz and exactly two months after its assignment to Ms. Hollod). Mr. Ferguson contacted Plaintiff on September 9 and promptly claimed to set closing for September 17. He canceled that closing, and again claimed to reset closing, this time for Friday, September 24. He never sent a HUD good faith estimate for either of those closings. That fact is hardly surprising since, again, Defendant has never had any intention of closing on this refinance. Defendant again and, by this time, predictably, canceled the third closing, again citing the self-same vague problems with the flood insurance that Mr. Drovitz had cited one month earlier, and during which month Defendant could have worked–but did not work–to resolve it.

12.     On what was to be the third alleged closing date, September 24, 2010, a full one month after Mr. Drovitz had said there were–without specifying what they were–problems with Plaintiff's flood insurance, in an effort to continue its ruse in hopes that Plaintiff would give up pursuing a mortgage refinance, Defendant forwarded to Plaintiff three flood insurance options that her own insurance agent had proposed directly to Defendant. When it forwarded those options to her, Defendant told her that it would consider one of those options, a standard Zone X flood policy, to be in compliance with a refinanced mortgage agreement. After discussing the matter with her insurance agent, on the very next business day, Monday, September 27, and only because Defendant

said it would consider it to be in compliance with the refinanced mortgage, Plaintiff purchased "standard" Zone X flood coverage. Plaintiff previously had a "preferred" Zone X policy, which Defendant has explicitly accepted as being in compliance with the terms of Plaintiff's current mortgage on the same property for at least two (2) years prior to Defendant's September 2010 demand for "standard" Zone X coverage. Regardless, in order to satisfy this, the latest of Defendant's endless demands to avoid closing, Plaintiff promptly mailed the policy premium for the standard Zone X coverage on the following day, September 28. On the same day, Plaintiff emailed Mr. Ferguson and told him that she had mailed the premium payment.

13.    Of course, had Plaintiff known which of the flood coverage options Defendant would accept in August, 2010 when Defendant canceled the first alleged closing for the same reason it canceled the second and third three and four weeks later, respectively, she would have put in motion the process to change her flood coverage at that time. Defendant, of course, characteristically dithered and failed to do so in August, and waited for at least one month before finally indicating what level of flood coverage it would consider to be in compliance with the terms of a refinanced mortgage. In this and other ways, Defendant has continuously frustrated Plaintiff's performance.

14.    Regardless, Plaintiff had been in contact with Mr. Charles Mayfield, the insurance agent processing the new policy, and both Plaintiff and the agent had kept Defendant informed about the progress of that policy. Of course, Plaintiff would not have purchased this significantly more expensive "standard" Zone X flood policy had Defendant not demanded that she do so as the sole remaining condition to refinance the mortgage. Indeed, as indicated above, Defendant holds Plaintiff's current mortgage and had for years accepted as complying with the terms of the existing mortgage agreement the less expensive preferred Zone X flood coverage. The standard Zone X flood

policy that Plaintiff initiated on September 28, 2010, is approximately $830.00 more expensive than the standard Zone X policy. Plaintiff would not have incurred that damage but for Chase's fraudulent and otherwise illegal acts.

15.     On October 1, 2010, only four (4) days after Plaintiff put in motion the processing of the new flood insurance policy in compliance with Chase's latest demand, without prior warning, Mr. Ferguson wrote a terse email to Plaintiff demanding the declarations page for the new policy by the end of that day. Of course, as both Defendant and Mr. Ferguson knew, that was an impossible demand since the new policy could not even have been written by that time. Nevertheless, again attempting to comply with Chase's endless demands for documentation and information, Plaintiff contacted the insurance agent who reported that the policy was in progress. She immediately relayed that information to Mr. Ferguson.

16.     That October 1 email was the last Plaintiff heard from Mr. Ferguson, or anyone else at Defendant, until October 20, 2010. Defendant more or less disappeared and ceased communicating with the Plaintiff, and had hoped Ms. Sabatier would just go away, after September 24. She did not. In an attempt to remain in contact with Defendant (who tried on numerous occasions throughout this process to disappear with, at a minimum, Plaintiff's $395.00 application fee), on October 8, 2010, Plaintiff again contacted Mr. Ferguson to update him on the progress of the policy. The policy was still being processed, and she reported that fact to Mr. Ferguson. Mr. Ferguson, again undoubtedly hoping that Plaintiff would simply go away, never responded to that email; but Plaintiff did not go away.

17.     Although Plaintiff had heard nothing from him for nearly three (3) weeks, at 1:40 p.m. on October 20, 2010, Plaintiff again updated Mr. Ferguson regarding the progress of the flood

policy by forwarding an email from her insurance agent. Instead of giving her the courtesy of a response or an acknowledgment that he had received the email, and without having communicated with Plaintiff for almost three weeks prior, at approximately 4:40 p.m. on October 20, Mr. Ferguson wrote an email to Plaintiff that reads, in its entirety, as follows:

> "Jennifer,
>
> I never got the updated policy from Mr. Mayfield [the insurance agent] you are going to have to resubmit the loan when you get the new policy.
>
> Thanks[.]"

18.     Of course, Mr. Ferguson never received the updated policy because Ms. Sabatier had not received it. As of October 20, as far as she knew, the new policy was not complete. In fact, as Ms. Sabatier learned two days later, upon receipt of a letter on October 22, 2010 (dated October 18, 2010) the policy had previously been completed on October 18, 2010. The Defendant was also an addressee on that October 18 letter, and, on information and belief, Defendant received the letter indicating the new flood policy was in place–and Chase was thus out of excuses to delay closing any longer–before it sent its October 20 email unilaterally cancelling the refinance. Thus, the flood insurance policy on which Chase claimed the Plaintiff's refinance was hanging in the balance was complete and in place two days before it simultaneously breached the contract and made clear to the Plaintiff its fraudulent intention all along never to close on the Plaintiff's mortgage refinance.

19.     In any event, the policy certainly would have been complete weeks before October 20 had Defendant not dragged its feet for over a month to correct the alleged problem with the flood policy that it knew about at least as early as August 23. Nevertheless, with Mr. Ferguson's strange, passive aggressive, Defendant has unilaterally canceled the refinancing process; and it has done so, according to the Defendant, as a result of the flood issue that (1) Mr. Anderson assured Ms. Sabatier

would result in a full refund of her application fee if it derailed the refinancing process and (2) Defendant could have corrected–but did not correct–at least one month prior.

20.     In sum, Defendant induced Plaintiff into submitting an application for refinance in June 2010 and accepted her fee.  After Plaintiff endured months of lying, dithering, excuses, scheduled closings, canceled closings and onerous, contradictory and counterproductive demands (all of which she patiently endured and promptly met), Defendant now has unilaterally terminated this mortgage refinance process on the weak pretext that it had not received information regarding a completed policy of insurance that had already been completed, but of which Plaintiff was unaware (but about which completion Chase had previously been apprised).

21.     Defendant constantly moved the target on the plaintiff–it always requested more and additional information–and then, although Plaintiff provided all the information and complied with all of defendant's onerous demands, it unilaterally pulled the plug on the refinance for a reason that is demonstrably false.  Chase's pattern of behavior betrays the fact that, from the beginning, it had no intention of ever honoring its contract with Plaintiff to refinance her mortgage.

22.     Although it has unilaterally canceled the refinance through no fault of Plaintiff, Defendant has failed and refused to refund the Plaintiff's application fee of $395.00, and has instead, unlawfully kept Plaintiff's application fee.  In addition, as noted above, Chase's fraudulent and otherwise illegal acts proximately caused Plaintiff to incur an additional and unnecessary $830.00 in flood insurance premiums.

23.     Additionally, and more importantly, Defendant has breached its contract, supported by good and adequate consideration, to complete the refinancing process, which would have resulted in a significantly reduced mortgage interest rate (from 6.375% to 5.125%).  By Plaintiff's

calculations, the damages Plaintiff has suffered as a result of Chase's failure to honor its contract to refinance this mortgage are approximately $38,441.52 over the life of the refinanced mortgage had Defendant not committed fraud and breached its contract.

24.     On October 22, 2010, the undersigned wrote a DTPA and TCPRC 38.001 demand letter to the Defendant as a predicate for bringing the present lawsuit. More than 60 days has elapsed since Plaintiff sent, and Defendant received, that demand letter. On October 27, 2010, defendant's senior executive, Mr. Matthew Dang, called the undersigned and made a verbal offer of settlement. He offered to resolve this matter by giving the Plaintiff a "no-cost" mortgage refinance by waiving approximately $3,400.00 in the "junk fees," as Mr. Dang called them, that Chase normally charges its refinance customers. Defendant has likewise failed to live up to that agreement.

## Causes of Action

### Count One–Breach of Contract

25.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 24, inclusive.

26.     All conditions precedent to defendant's performance under the contract have occurred or have been performed, excused, waived or otherwise satisfied.

27.     Plaintiff fully or substantially performed all her obligations under the contract, she tendered performance, or any alleged failure to perform is excused.

28.     Defendant breached the contract by failing and refusing to complete and close on the mortgage refinance as described herein above.

29.     As a direct and proximate result of defendant's breach of contract, Plaintiff has suffered economic damages in an amount within the jurisdictional limits of this Court, and for which she hereby sues.

30.     In addition to actual and consequential damages, Plaintiff also seeks an award of reasonable attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code, § 38.001, *et seq.*, for which Plaintiff hereby sues.

**Count Two–Fraud–Common Law and Tex. Bus. Comm. Code § 27.01**

31.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 24, inclusive.

32.     As indicated above, Defendant made one or more material representations regarding its intentions to close on the mortgage refinance involved in this case; (2) defendant's representations were false; (3) when it made them it knew them to be false or Defendant made them recklessly without any knowledge of the truth and as positive assertions; (4) Defendant made its false representations with the intention that the Plaintiff should act on them; (5) the Plaintiff acted in reliance upon the defendant's misrepresentations; and (6) the Plaintiff thereby suffered injury.

33.     Accordingly, Defendant has committed actionable fraud under both the common law of the State of Texas and under the Texas Business and Commerce Code, § 27.01, and for which she hereby sues.

34.     As a direct and proximate result of defendant's fraud, Plaintiff has suffered compensatory damages, including but not limited to, damages for mental pain, suffering and anguish, and for which she hereby sues.

35.     As a direct and proximate result of the defendant's fraud, the Plaintiff has suffered damages in an amount within the jurisdictional limits of this Court and for which she hereby sues.

36.     Defendant committed the acts described herein with fraud, malice or gross negligence thereby entitling Plaintiff to an award of punitive or exemplary damages.  Further, as a result of Defendant's violations of section 27.01 of the Texas Business and Commerce Code, Plaintiff is entitled to an award of reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court as provided by Section 27.01 of the Texas Business and Commerce Code

### Count Three–Negligent Misrepresentation

37.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 24, inclusive.

38.     Defendant was acting in the course of its business, profession or employment and/or had a pecuniary interest in the transaction, supplied false information for the guidance of the Plaintiff in her business transactions, and Defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  Plaintiff justifiably relied on that false information the Defendant communicated.  As such, Defendant is liable for unlawful negligent misrepresentation.

39.     As a direct and proximate result of her justifiable reliance, the Plaintiff has suffered actual damages in an amount within the jurisdictional limits of this Court and for which Plaintiff hereby sues.  As a proximate result of defendant's negligent misrepresentation, the Plaintiff has suffered consequential damages that flowed directly from those misrepresentations, and which damages were a foreseeable consequence of that unlawful conduct.

40.     As a result of defendant's negligent misrepresentation, the Plaintiff has suffered mental pain, suffering, anguish, and loss of enjoyment of life for which she hereby sues.

41.     Defendant's unlawful conduct was fraudulent, malicious or grossly negligent and therefore justifies the imposition of exemplary damages for which plaintiffs hereby sue.

**Count Four–Texas Theft Liability Act, Texas Civil Practice and Remedies Code, § 134.001, *et seq.***

42.     Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 24, inclusive.

43.     The defendant's actions in unlawfully appropriating the Plaintiff's property constituted violations of the Texas Theft Liability Act, Texas Civil Practice and Remedies Code, § 134.001, *et seq.* Specifically, Defendant unlawfully appropriated property as described by Section 31.03, Texas Penal Code.

44.     As a result of defendant's unlawful acts under the Texas Theft Liability Act, Plaintiff has suffered actual damages in an amount within the jurisdictional limits of this Court and for which she hereby sues. Plaintiff also sues for statutory damages in the maximum amount permitted by law.

45.     As a result of defendant's unlawful acts under the Texas Theft Liability Act, Plaintiff has suffered damages for mental pain, suffering and anguish for which Plaintiff is entitled to recover against Defendant. As a result of defendant's violations of the Texas Theft Liability Act, the Plaintiff have suffered consequential damages that flowed directly from those acts, and which damages were a foreseeable consequence of that unlawful conduct.

46.     Defendant's unlawful acts under the Texas Theft Liability Act were fraudulent, malicious or grossly negligent thus entitling plaintiffs to an award of exemplary damages.

**Count Five–Deceptive Trade Practices-Consumer Protection Act–Texas Business and Commerce Code, § 17.41, *et seq*.**

47.    Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 6 to 24, inclusive.

48.    Plaintiff would show that Defendant engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act, Texas Business and Commerce Code, § 17.41, *et seq*.

49.    Defendant engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

50.    Defendant violated Section 17.46(b) of the Texas Business and Commerce Code, in that Defendant:

(a)    represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(b)    advertised goods or services with intent not to sell them as advertised;

(c)    misrepresented the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(d)    failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

(e)    advertised goods or services with intent not to supply a reasonable expectable public demand.

---

Plaintiff's First Amended Original Petition                                                                - Page 13

51.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered (1) actual damages and (2) a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, both within the jurisdictional limits of this Court for which she hereby sues.

52.    Defendant's actions in violation of the Texas Deceptive Trade Practices-Consumer Protection Act as described herein above were knowing and/or intentional thus entitling Plaintiff to an award of treble damages.

53.    Plaintiff is further entitled to an award of attorney's fees and costs pursuant to Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code, § 17.50(d).

## Agency/*Respondeat Superior*

54.    At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

55.    Said Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

56.    At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendant occurred within the scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

57.    Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such employee complained of herein under the doctrine of *respondeat superior*.

## Jury Demand

Plaintiff hereby demands a trial by jury on all claims, issues and defenses so triable.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jennifer Miller Sabatier prays that the Defendant Chase Home Finance, LLC be cited to appear, that the Court set this case for trial at the earliest practicable date and, on trial of this cause, Plaintiff have judgment against Defendant for the following relief:

1. Actual, consequential and/or statutory damages as set forth above in the maximum amount the law allows;

2. Pre-judgment and post-judgment interest at the highest lawful rates;

3. Treble damages under the Deceptive Trade Practices-Consumer Protection Act

4. Punitive or exemplary damages;

5. Attorney's fees and costs of suit;

6. Declaratory and/or injunctive relief; and

7. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

# QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS

2001 BRYAN STREET, SUITE 1800
DALLAS, TEXAS 75201

WM. LANCE LEWIS
Direct: (214) 880-1827

Phone: (214)  871-2100
Fax: (214) 871-2111

January 11, 2011

**VIA FEDERAL EXPRESS**

Hays County Clerk
Hays County Courts-at-Law
110 East Martin L King Dr # 108A
San Marcos, TX 78666

FILED
HAYS COUNTY, TEXAS
at_____o'clock____M.

JAN 12 2011

By_____
COUNTY CLERK

Re:     Jennifer Miller Sabatier v. Chase Home Finance LLC; Cause No. 13812-C; in the
County Courts-at-Law, Hays County, Texas

Dear Susan:

Thank you for speaking with me in regards to getting a copy of the above-referenced file.
This letter will serve as my written request for a copy of the Court's entire file (including the
original petition, amended petition, citation, return receipt of citation and the original answer for
a total of 34 pages), along with a **certified copy of the Docket Sheet**.  I have enclosed our firm
check in the amount of $40.00 for the copy and certifying fees and a self addressed, postage
prepaid envelope for your convenience in forwarding the documents to me.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Wm. Lance Lewis

WLL:lw
Enclosure
3671.0768

**EXHIBIT
8**

NO. 13812-C

| | | |
|---|---|---|
| JENNIFER MILLER SABATIER,<br>Plaintiff, | §<br>§<br>§ | IN THE COUNTY COURT AT LAW |
| vs. | §<br>§<br>§ | |
| CHASE HOME FINANCE, LLC,<br>Defendant. | §<br>§<br>§ | HAYS COUNTY, TEXAS |

**MOTION TO SET AND NOTICE OF HEARING**

NOW COMES Edmond S. Moreland, Jr. and files this Motion to set the above entitled and numbered cause on the **JURY**/NON-JURY docket for the 18th day of APRIL, 2011, at 9:00 a.m. at 110 MLK, San Marcos, Texas 78666.

\# Announcement docket 4/15/11 at 9:00AM.

The hearing will be set for the purpose of : **TRIAL ON THE MERITS**

The hearing will take approximately **2 DAYS**.

A true and correct copy of the Motion was sent to:

Mr. William Lance Travis
Quilling, Selander, Lownds Winslett & Moser, P.C.
2100 Bryan Street, Suite 1800
Dallas, Texas 75201
Facsimile (214) 871-2111

on the 12th day of January, 2011.

_____
Edmond S. Moreland, Jr.

**EXHIBIT**
9

## NOTICE

PLEASE TAKE NOTICE that this case is set for the _18th_ day of _APRIL_,
2011 at _9:00_ a.m,

BY AUTHORITY OF THE COUNTY COURTS

_Rene Garner_

_Hays Co._ , Court Administrator

Date: _1/12/11_

Copies mailed or delivered on the above date to:
(List all parties names and addresses)

    Mr. William Lance Travis
    Quilling, Selander, Lownds Winslett & Moser, P.C.
    2100 Bryan Street, Suite 1800
    Dallas, Texas 75201
    Facsimile (214) 871-2111
    Counsel for Defendant